**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.: 22-CV-08226 (KPF) |
| -against- | |
| THEODORE J. FARNSWORTH, ET AL., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF KHALID ITUM'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

MILBANK LLP
Adam Fee
Kim B. Goldberg
55 Hudson Yards
New York, NY 10001 /
2029 Century Park East, 33rd Fl.
Los Angeles, CA 90067
Telephone: (212) 530-5000
afee@milbank.com
kgoldberg@milbank.com

*Counsel for Defendant Khalid Itum*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.   Legal standard ............................................................................................................... 4

    II.  The Complaint fails to state a claim for aiding and abetting any violation of Exchange
       Act Section 13(b)(2)(A). ............................................................................................... 5

    III.  The Complaint fails to state a claim for violations of Exchange Act Section 13(b)(5)
        and Rules 13b2-1 and 13b2-2. ..................................................................................... 8

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).......................................................................................4

*In re NYSE Specialists Securities Litigation*,
    503 F.3d 89 (2d Cir. 2007).........................................................................................4

*Rich v. Maidstone Financial, Inc.*,
    2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ........................................................5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...................................................................................4, 5

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir. 1990).......................................................................................5

*Schambeau v. Schambeau*,
    2021 WL 667927 (S.D. Ala. Jan. 21, 2021) ....................................................... 6-7, 9

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012).......................................................................................5

*SEC v. Baxter*,
    2007 WL 2013958 (N.D. Cal. July 11, 2007)....................................................... 7-8

*SEC v. Dauplaise*,
    2006 WL 449175 (M.D. Fla. Feb. 22, 2006) ..........................................................10

*SEC v. Felton*,
    2021 WL 2376722 (N.D. Tex. June 10, 2021) ...........................................7, 8 n.2

*SEC v. Leslie*,
    2010 WL 2991038 (N.D. Cal. July 29, 2010)......................................................8 n.2

*SEC v. Miller*,
    2017 WL 5891050 (C.D. Cal. Nov. 15, 2017)................................................... 5-6, 9

*SEC v. Patel*,
    2008 WL 782465 (D. N.H. Mar. 24, 2008) ................................................................ *passim*

*SEC v. Power*,
    525 F. Supp. 2d 415 (S.D.N.Y. 2007) ........................................................................4

*SEC v. Safety-Kleen Corp.*,
    2003 WL 23199934 (S.D.N.Y. Nov. 19, 2003) ........................................................9

*SEC v. Softpoint, Inc.*,
    958 F. Supp. 846 (S.D.N.Y. 1997) ..........................................................................9

*SEC v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................................8, 10

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ......................................................................................4

**Statutes and Regulations**

15 U.S.C. § 78m(b)(2)(A) ..............................................................................................5

15 U.S.C. § 78m(b)(5) ...................................................................................................8

15 U.S.C. § 78t(e) ..........................................................................................................5

17 C.F.R. § 240.13b2-1 ..................................................................................................8

17 C.F.R. § 240.13b2-2 ..................................................................................................8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................1, 4

Federal Rule of Civil Procedure 9(b) ............................................................................4

Khalid Itum respectfully submits this memorandum of law in support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint ("Complaint") filed in this action by the Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

Mr. Itum is a consultant who specializes in helping companies develop relationships in the entertainment industry.  He provided business development services to MoviePass, Inc. ("MoviePass"), a movie subscription service, as an outside consultant before becoming a MoviePass employee for about a year and a half.  As part of his work for MoviePass, Mr. Itum planned industry events to raise MoviePass's profile, for which his consulting company (Kaleidoscopic Ventures LLC ("Kaleidoscope")) was paid by MoviePass.  The Complaint's only allegations with respect to Mr. Itum concern invoices and budgets submitted to MoviePass and its parent company, Helios and Matheson Analytics Inc. ("HMNY"), in connection with these events.

The Complaint primarily alleges that the Chief Executive Officers of MoviePass and HMNY made materially misleading statements concerning MoviePass's business model and profitability.  Mr. Itum is not alleged to have had any involvement in those statements, as he had nothing to do with any public statements those companies did or did not make.

Instead, the Complaint tries—and fails—to spin a books and records claim out of invoices and related submissions Mr. Itum provided for Kaleidoscope's services.  First, the Complaint alleges that Mr. Itum substantially assisted HMNY in allegedly violating Section 13(b)(2)(A) of the Securities Exchange Act of 1934 (the "Exchange Act") by failing to maintain accurate books and records.  But the Complaint does not identify any supposedly false HMNY books and records, let alone any responsibility Mr. Itum, a MoviePass business development employee, had for such books and records.  Second, the Complaint asserts violations of Section 13(b)(5) of the Exchange

Act and Rules 13b2-1 and 13b2-2 promulgated thereunder based upon alleged falsification of HMNY books and records and false or misleading statements to accountants.  Here too, the Complaint does not identify the books and records that were supposedly falsified, or allege that Mr. Itum—who was not even an HMNY employee—had any responsibility for those books and records or made any statements to HMNY's accountants.

## **BACKGROUND**

Mr. Itum is 42 years old and a resident of Los Angeles, California.  He earned undergraduate and master's degrees from Johns Hopkins University in 2002 and 2003, respectively, and since then has worked in various consulting, business development, and advisor positions.

In May 2014, Mr. Itum began to work for MoviePass as a business development consultant, with a focus on building industry relationships for the company.  In around October 2017, Mr. Itum joined MoviePass as its Vice President of Business Development, a position he held for one year before becoming MoviePass's Executive Vice President in October 2018.  Compl. ¶ 15.  He left the company around March 2019.  *Id.*  Mr. Itum's work for MoviePass focused on fostering entertainment-industry partnerships, including facilitating studio and independent distributor partnerships and brand and content deals.  For example, Mr. Itum helped plan and provide production services for high-profile events sponsored by MoviePass in connection with the Sundance Film Festival in January 2018 (the "Sundance Event") and the Coachella Music Festival in April 2018 (the "Coachella Event").  *Id.* ¶¶ 81-82.  As MoviePass and HMNY executives and finance personnel were aware, he provided these services though Kaleidoscope, his separate consulting business, because the work involved services outside his MoviePass capacity.

2

Mr. Itum is not an accountant and has no accounting or financial reporting expertise. During his time at MoviePass, he had no role or responsibilities with respect to accounting or financial recordkeeping, and no role at all with respect to the public company parent, HMNY. The Complaint does not allege otherwise.

The claims against Mr. Itum focus on his alleged submission of invoices and budgets to HMNY and MoviePass in connection with the Sundance Event and the Coachella Event, to wit:

1. ***$137,250 Sundance Event Invoice***:  The Complaint alleges that Mr. Itum sent HMNY an invoice from Kaleidoscope for expenses incurred for the Sundance Event and participated in the creation of an itemized budget for that event. Compl. ¶¶ 89, 93.  The Complaint alleges that the budget overstated the expenses that Kaleidoscope had paid to a third-party event producer by at least $10,000.  *Id.* ¶ 96.

2. ***$25,000 Sundance Event Invoice***:  The Complaint alleges that a February 2018 invoice for overages in connection with the Sundance Event did not reflect actual overages but was in fact a bonus to Mr. Itum.  Compl. ¶¶ 100-103.  It alleges that the payment was recorded as a marketing expense in MoviePass's books and was not included in a list of bonuses HMNY's CFO provided to its auditor.  *Id.* ¶¶ 103-106.

3. ***$150,000 Payment for Production Services***:  The Complaint alleges that the HMNY CEO instructed the MoviePass CEO to pay Mr. Itum a bonus, and that the MoviePass CEO instructed MoviePass accounting to pay the bonus.  Compl. ¶¶ 108-109.  It alleges that Mr. Itum sent MoviePass an invoice from Kaleidoscope seeking $150,000 for "Production Services," which the MoviePass CEO approved, and that the funds were then wired to Kaleidoscope. *Id.* ¶¶ 110, 112.  The Complaint alleges that Kaleidoscope had provided no such services to MoviePass, and that the payment was memorialized in MoviePass's books as "MP Consulting-outside service."  *Id.* ¶¶ 107, 111-13.

4. ***$126,000 Coachella Event Invoice***:  The Complaint alleges that in March 2018 Mr. Itum sent HMNY's CFO an invoice with respect to the Coachella Event, which the HMNY CFO approved.  Compl. ¶ 114.  It alleges that, thereafter, Mr. Itum prepared and approved—but is not alleged to have sent—an itemized budget for HMNY that included an allegedly non-existent "Buy-Out Fee," which was also reflected in a summary Mr. Itum provided to HMNY (which also purportedly overstated the amount spent on the event).  *Id.* ¶¶ 119-22.

The Complaint does not otherwise identify any book or record that was rendered false as a result of these submissions.

## ARGUMENT

### I.      Legal standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A court should not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (alteration in original) (internal citation and quotation marks omitted).  Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original).

Because the Complaint's claims against Mr. Itum are based on alleged falsities—the supposedly false invoices and related submissions—it must satisfy the heightened pleading standard of Rule 9(b).  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (holding that Rule 9(b) applies when securities violations are predicated on allegations of fraud, even if fraud is not a required element of the claim); *SEC v. Power*, 525 F. Supp. 2d 415, 423-24 (S.D.N.Y. 2007) (applying Rule 9(b) to Section 13 claims).  Rule 9(b) requires that the circumstances constituting the alleged fraud be stated with particularity.  *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). Thus, the Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170 (internal citation and quotation marks

omitted).   "The 'particularity requirement' contained in Rule 9(b) is substantial," *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *10 (S.D.N.Y. Dec. 20, 2002), and serves to safeguard against "improvident charges of wrongdoing" that can cause irreparable harm to a defendant's reputation and goodwill, *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).   *See also Rombach*, 355 F.3d at 171 ("The particularity requirement of Rule 9(b) serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.") (internal citation and quotation marks omitted).

## II.  The Complaint fails to state a claim for aiding and abetting any violation of Exchange Act Section 13(b)(2)(A).

Section 13(b)(2)(A) of the Exchange Act requires issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer."  15 U.S.C. § 78m(b)(2)(A).  To state a claim for aiding and abetting a violation of the Exchange Act, the SEC must allege: (1) a securities law violation by a primary wrongdoer; (2) knowledge or recklessness by the person sought to be charged; and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing. *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012); 15 U.S.C. § 78t(e).  The standard for substantial assistance is well established:  it requires that the defendant "associated himself with the venture, that the defendant participated in it as in something that he wished to bring about, and that he sought by his action to make it succeed."  *Apuzzo*, 689 F.3d at 212 (internal citation, quotation marks, and alterations omitted).

In *SEC v. Miller*, 2017 WL 5891050 (C.D. Cal. Nov. 15, 2017), the court dismissed a Section 13(b)(2)(A) claim that "allege[d] that the practice of splitting purchase orders generated books and records that failed to accurately reflect [a company's] sales transactions," but did not

specify "exactly *which* books, records, or accounts failed to accurately reflect" these transactions. *Id.* at *7. The court noted that there were "several possible candidates, such as the split purchases [sic] orders themselves, [the company's] first and second quarter 2013 financial statements, or perhaps some unidentified intermediate records based on the split purchase orders from which [the company's] financial reports were compiled," and held that this lack of specificity was fatal to the Section 13(b)(2)(A) claim given the heightened pleading requirements of Rule 9(b). *Id.*

The same reasoning should apply here. The Complaint does not adequately allege any underlying violation of Section 13(b)(2)(A) because it does not identify what books, records, or accounts were allegedly false. The invoices and submissions from Mr. Itum's company do not constitute books and records of MoviePass or HMNY. And the Complaint makes only vague, indeterminate references to MoviePass's and HMNY's "books": (1) the $25,000 Sundance Event payment "was memorialized in MoviePass's books as a marketing expense"; (2) the $150,000 payment for production services "was memorialized falsely in MoviePass's books as 'MP Consulting-outside services'"; and (3) "the books, records, and accounts of HMNY falsely recorded improper payments to Kaleidoscope as legitimate business expenses of HMNY and MoviePass." Compl. ¶¶ 104, 113, 165.

Even assuming, *arguendo*, that there were a primary violation of Section 13(b)(2)(A), the Complaint fails to allege substantial assistance by Mr. Itum in that violation. The Complaint does not allege that *Mr. Itum* participated in the drafting, submission, or keeping of any of MoviePass's or HMNY's books, accounts, or records, or that he assisted in rendering any such records false or misleading. *See, e.g.*, *SEC v. Patel*, 2008 WL 782465, at *17-19 (D. N.H. Mar. 24, 2008) (dismissing Section 13(b)(2)(A) aiding and abetting claim where complaint failed to allege facts adequately connecting defendant to corporate books, records, and accounts); *see also Schambeau*

6

*v. Schambeau*, 2021 WL 667927, at *12 (S.D. Ala. Jan. 21, 2021) (claims of violations of Section 13(b)(2)(A) and Rule 13b2-1 insufficient because there was no allegation of "how any of the Defendants' material misrepresentations and omissions (misrepresentations and omissions which Plaintiff nowhere specifically outlines/alleges, including the dates they were made and what was actually said) affected any books, records or accounts"), *report and recommendation adopted*, 2021 WL 665104 (S.D. Ala. Feb. 19, 2021).   In fact, in the two sentences alleging the "memorialization" of two of the four contested payments[1] in MoviePass's (unspecified) books, the Complaint uses only the passive voice and identifies no responsible actor, let alone Mr. Itum.  *See* Compl. ¶ 104 ("This payment *was memorialized* in MoviePass's books as a marketing expense.") (emphasis added); *id.* ¶ 113 ("This $150,000 payment to Itum *was memorialized* falsely in MoviePass's books as 'MP Consulting-outside services.'") (emphasis added).  The passive voice is the last refuge of the weak pleader.  That someone—we are not told who—determined to record an invoice as "a marketing expense" was an event outside of Mr. Itum's control and not something he is alleged to have intended or directed.

The allegations in the Complaint are in stark contrast to allegations of active engagement in false recordkeeping and improper revenue recognition that courts have found to state a claim for aiding and abetting violations of Section 13(b)(2)(A).  *Cf., e.g.*, *SEC v. Felton*, 2021 WL 2376722, at *2-4, *14 (N.D. Tex. June 10, 2021) (defendant allegedly instructed third-party warehouse company to move products across the street so auditors would not see them, wrongfully excluded certain products from physical inventory count, and altered customer documents to transform revenue-neutral exchanges into new sales); *SEC v. Baxter,* 2007 WL 2013958, at *9 (N.D. Cal. July 11, 2007) (defendant alleged to have "participated in drafting [] false and

---

[1] There are no allegations as to the recording or memorialization of the other two payments, the $137,250 Sundance Event payment or the Coachella Event payment.

misleading disclosures regarding the [transaction at issue], reviewed the [relevant] financial statements, directed the reclassification of unsubstantiated balances to conceal such balances from the auditors, and signed the management representation letters").

### III.     The Complaint fails to state a claim for violations of Exchange Act Section 13(b)(5) and Rules 13b2-1 and 13b2-2.

To state a claim for a violation of Section 13(b)(5) of the Exchange Act, the SEC must allege that Mr. Itum *knowingly* circumvented or failed to create and maintain a system of internal accounting records, or that he *knowingly* falsified the books, records, or accounts of the issuer.  15 U.S.C. § 78m(b)(5).  Rule 13b2-1 bars the falsification of any book, record, or account an issuer is required to maintain.  17 C.F.R. § 240.13b2-1.  And Rule 13b2-2 requires the SEC to plead that "(1) the individual is a director or an officer of an issuer (2) who 'directly or indirectly' made or caused to be made 'a materially false or misleading statement' or omission to an accountant (3) in connection with an SEC filing or audit."  *SEC v. Straub*, 921 F. Supp. 2d 244, 266 (S.D.N.Y. 2013); *see also* 17 C.F.R. § 240.13b2-2.

The Complaint does not allege that Mr. Itum knowingly falsified any HMNY books and records so as to have violated Section 13(b)(5) or Rule 13b2-1.[2]  *First*, Mr. Itum is not alleged to

---

[2] The SEC stated in its response to Mr. Itum's pre-motion letter that the Section 13(b)(5) claim does not allege knowing circumvention of accounting controls.  ECF No. 38 at 3 n.4.  Indeed, the Complaint does not allege that Mr. Itum knew anything about HMNY's internal controls, let alone that he "knowing[ly] circumvent[ed]" them.  *See SEC v. Leslie*, 2010 WL 2991038, at *27 (N.D. Cal. July 29, 2010) (granting defendant's motion for summary judgment on Section 13(b)(5) claim where SEC did not identify "the specific controls that were insufficient or that are needed" or point "to evidence that could suggest that [defendant] knowingly failed to implement a system of internal controls").  It makes no allegation whatsoever regarding the particular "accounting controls" that were allegedly circumvented.  *See Felton*, 2021 WL 2376722, at *12 (granting motion to dismiss Section 13(b)(5) claim where the complaint "does not identify a single internal control" such that the court could not assess whether defendant knowingly circumvented that control).  Nor does the Complaint mention any process within HMNY with respect to books and records or indicate who was responsible for ensuring accurate books and records.  *See Patel*, 2008 WL 782465, at *13 (dismissing Section 13(b)(5) claim where SEC failed to allege "particularized facts, or any facts at all, showing that [defendant]: (1) had any involvement with corporate books, records, or internal accounting controls or (2) was knowingly involved in falsifying any such books or records or failing to implement internal controls").  The Complaint seems to assume that generalized knowledge of internal controls would be shared by everyone at a relatively small company like MoviePass, but that is baseless and nonsensical as applied to Mr. Itum, a business development executive.  And, of course, any (unalleged) knowledge of MoviePass controls by virtue of Mr. Itum's role at that company would say nothing about his knowledge of controls at the issuer, HMNY.

have held any accounting or finance position at either MoviePass or HMNY, or to have had any control over HMNY's books and records. *Cf. SEC v. Safety-Kleen Corp.*, 2003 WL 23199934, *7 (S.D.N.Y. Nov. 19, 2003) (holding CFO liable for violations of Section 13(b)(5) and Rule 13b2-1 where he directed improper revenue recognition, instructed that operating expenses be improperly deferred, signed a false management representation letter, and caused company to file materially false periodic reports and registration statement); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 866 (S.D.N.Y. 1997) (Sotomayor, J.) ("As president of Softpoint, [defendant] was responsible for the accuracy of Softpoint's books and records.  By deciding to retain fictitious entries and payments in Softpoint's accounts receivable ledger, he acted neither reasonably nor in conformity with Generally Accepted Accounting Principles.  [Defendant] also approved and signed the 1994 annual disclosure that misrepresented Softpoint's sales and collections" and "participated in the preparation of numerous annual and quarterly reports containing the fictitious entries and payments.").

*Second*, as discussed *supra* in Section II, the Complaint does not identify any supposedly false book, record, or account at HMNY and therefore fails to state a claim for falsification of any such book, record, or account.  *See Schambeau*, 2021 WL 667927, at *12 (plaintiff failed to allege "how any of the Defendants' material misrepresentations and omissions (misrepresentations and omissions which Plaintiff nowhere specifically outlines/alleges, including the dates they were made and what was actually said) affected any books, records or accounts"); *Miller*, 2017 WL 5891050, at *7 (dismissing Rule 13b2-1 cause of action because complaint "fails to specif[y] exactly *which* books, records, or accounts failed to accurately reflect" transactions); *Patel*, 2008 WL 782465, at *13 (dismissing Rule 13b2-1 claim where "the complaint does not identify any book, record, or account that [defendant] falsified and does not allege that [defendant] had any

responsibility for implementing the company's internal accounting controls"); *SEC v. Dauplaise*, 2006 WL 449175, at *8 (M.D. Fla. Feb. 22, 2006) (dismissing Rule 13b2-1 claim, even where defendant allegedly made material misrepresentations and omissions, because SEC did not allege how issuer's books and records were affected).

As to Rule 13b2-2, Mr. Itum was not a director or officer of the issuer—HMNY—and is therefore not within the ambit of the rule. To the contrary, he is only alleged to have been employed by MoviePass, a private company in which HMNY held a majority interest, Compl. ¶¶ 1, 15, 19. *See Straub*, 921 F. Supp. 2d at 266 ("A plaintiff pleading a violation of Rule 13b2-2 must sufficiently allege that (1) the individual is a director or an officer *of an issuer*") (emphasis added); *Dauplaise*, 2006 WL 449175, at *8 & n.26 ("Rule 13b2-2 generally forbids *officers and directors of issuing companies* from making material misstatements or omissions in communications with accountants. . . ."; referencing defendant's ongoing role as "de facto CFO" to support liability) (emphasis added).

Even if Mr. Itum were within the ambit of Rule 13b2-2, the Complaint does not identify any materially false or misleading statement he made to an accountant with respect to HMNY's financial statements. At the most, it alleges that Mr. Itum was "copied on emails" referencing HMNY's accountants' request for information, responded to an email from HMNY personnel seeking budget information, and knew that information he provided to HMNY would be relied upon by HMNY's auditors. Compl. ¶¶ 105, 130-31, 136. But the only people alleged to have provided information to HMNY's auditors are "HMNY's employees, including the CFO." *Id.* ¶ 136; *see also id.* ¶¶ 142-44 (describing HMNY and MoviePass CEOs' receipt of emails concerning auditor requests). These allegations do not suffice to state a Rule 13b2-2 claim against Mr. Itum. *See Patel*, 2008 WL 782465, at *14 (dismissing Rule 13b2-2 claim where the complaint

"identifie[d] *no* statements [defendant] made to the company's accountants or auditors").  The Complaint's attempt to stretch the bounds of Rule 13b2-2 simply goes too far; it cannot be the case that anyone who provides any information to a public company, which is then provided in separate communications to the company's accountants, is swept up by the rule.

## <u>CONCLUSION</u>

For the reasons set forth above, Mr. Itum respectfully requests that the Court dismiss the Complaint as against him with prejudice.

Dated:  New York, New York
            January 24, 2023                                MILBANK LLP

                                                            By: */s/ Adam Fee*
                                                            Adam Fee
                                                            Kim B. Goldberg
                                                            55 Hudson Yards
                                                            New York, NY 10001 /
                                                            2029 Century Park East, 33rd Fl.
                                                            Los Angeles, CA 90067
                                                            Telephone: (212) 530-5000
                                                            afee@milbank.com
                                                            kgoldberg@milbank.com

                                                            *Counsel for Defendant Khalid Itum*